United States Trustee; Timea
Terestyak, Appellees.

In re: Studio 2000 USA, Inc., Debtor,

Studio 2000 USA, Inc.; Albert
M. Kun, Esq., Appellants,

v.

United States Trustee; Timea
Terestyak, Appellees.

No. 03–57221, 04–15423.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 12, 2005.*

Decided Aug. 22, 2005.

Albert Miklos Kun Esq., Law Office of
Albert M. Kun, San Francisco, CA, for
Appellant.

Edward G. Myrtle, Esq., Office of the
U.S. Trustee, Lawrence D. Murray, Esq.,
Murray & Associates, San Francisco, CA,
for Appellees.

Before: PREGERSON, HAWKINS and
THOMAS, Circuit Judges.

---

* This panel unanimously finds this case suit-
able for decision without oral argument. *See*
Fed. R.App. P. 34(a)(2).

## MEMORANDUM **

Appellants Studio 2000 USA Inc.
("Studio") and Studio's bankruptcy coun-
sel, Albert Kun, appeal the Bankruptcy
Appellate Panel's ("BAP") decisions af-
firming the bankruptcy court, which dis-
missed Studio's Chapter 11 case and
imposed sanctions on Kun. We have ju-
risdiction pursuant to 28 U.S.C.
§ 158(d).

After a careful review of the record and
briefs, we affirm for the reasons stated in
the well-reasoned BAP opinions.

AFFIRMED.

**Badel Guled SHIRE, Petitioner,**

v.

**Alberto GONZALES, Attorney
General, Respondent.**

No. 03–73431.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 18, 2005.

Decided Aug. 23, 2005.

---

Jason Marachi, Law Office of Jason Marachi, San Francisco, CA, for Petitioner.

Regional Counsel, Laguna Niguel, CA, Ronald E. LeFevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Jennifer L. Lightbody, Esq., Isaac R. Campbell, Esq., U.S. Department of Justice, Washington, DC, for Respondent.

Before: THOMAS, PAEZ, and CALLAHAN, Circuit Judges.

## MEMORANDUM *

Badel Guled Shire, a native and citizen of Somalia, petitions for review of an order of the Board of Immigration Appeals' ("BIA") summarily affirming the immigration judge's ("IJ") decision denying his application for asylum, withholding of removal and relief under the Convention Against Torture. We have jurisdiction pursuant to 8 U.S.C. § 1252. We review the BIA's decision under the substantial evidence standard, *Wang v. Ashcroft,* 341 F.3d 1015, 1019–20 (9th Cir.2003), and we grant the petition for review. Because the parties are familiar with the factual and procedural history of the case, we will not recount it here. Because the IJ found Shire credible, we consider all facts from his testimony as true, including any reasonable inferences drawn from those facts. *Zheng v. Ashcroft,* 332 F.3d 1186, 1189 (9th Cir.2003).

Shire does not claim that he suffered past persecution; therefore, he is not entitled to a presumption of a well-founded fear of persecution on account of a protected ground. In this case, his fear of future persecution is based, not so much on an individualized fear, but on a "group-based risk of persecution." *See Lolong v. Gonzales,* 400 F.3d 1215, 1219 (9th Cir.2005).

Shire asserts that he has a well-founded fear of persecution based on his status as member of the minority Midgan clan, Ma

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3. Alberto Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R.App. P. 43(c)(2).

Diban sub-clan. The Midgan are a small ethnic group, despised and discriminated against by the major clans. Midgan "clan members are bound in servitude to noble Somali families and are considered low-caste and subhuman by other Somali clans." *Ali v. Ashcroft*, 394 F.3d 780, 782 (9th Cir.2005). The State Department Reports on Somalia confirm that minority clans such as the Midgan are "subjected to killings, harassment, intimidation, and abuse by armed gunmen of all affiliations," U.S. Dept. of State, Somalia Country Report on Human Rights Practices for 2001 at 13, and that the Midgan stand out as a caste which "can be attacked with impunity," U.S. Dept. of State, Somalia: PROFILE OF ASYLUM CLAIMS AND COUNTRY CONDITIONS, 2000 at 17. On the basis of such evidence, we are compelled to conclude that Shire, as a member of the Midgan clan, is a member of a significantly disfavored group. Accordingly, Shire "must demonstrate a 'comparatively low' level of particularized risk." *Lolong*, 400 F.3d at 1220. We conclude that Shire has satisfied this proportionately lower showing of individualized harm. *See id.*

According to Shire's undisputed testimony, both his father and uncle were killed because of their clan membership, and his brother received a written death threat. Shire also testified that he was mistreated throughout his life due to his status as Midgan. Thus, while "general conditions of strife" do not give rise to asylum eligibility, *Rostomian v. INS*, 210 F.3d 1088,

1089 (9th Cir.2000), Shire's testimony, which is generally corroborated by the State Department reports in the record, is that he fears for his safety because of his membership in a specific group, the Midgan clan. Because Shire has demonstrated that the Midgan clan is a significantly disfavored group in Somalia, we conclude that Shire's credible testimony regarding the harm to him and to those persons similarly situated to him is more than adequate to satisfy the "comparably low" level of individualized risk required by our case law in circumstances such as this. *Sael v. Ashcroft*, 386 F.3d 922, 927 (9th Cir.2004); *see also Lolong*, 400 F.3d at 1219; *Hoxha v. Ashcroft*, 319 F.3d 1179, 12182–83 (9th Cir.2003).[1]

In sum, Shire has established a well-founded fear of future persecution. We remand to the BIA for a determination of whether Shire is otherwise eligible for asylum or withholding of removal. *See INS v. Ventura*, 537 U.S. 12, 16–17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam).

**PETITION GRANTED.**

CALLAHAN, Circuit Judge, dissenting.

I respectfully dissent.

The decision to deny asylum or withholding of removal is reviewed under a deferential substantial evidence standard. *Njuguna v. Ashcroft*, 374 F.3d 765, 769 (9th Cir.2004). This standard limits reversals of BIA decisions to situations where the "Petitioner presented evidence 'so compelling that no reasonable fact finder could find' that Petitioner has not estab-

---

1. The dissent suggests that Shire's evidence is insufficient for lack of documentary corroboration. However, documentary corroboration is not required where an applicant is deemed credible. *Kaur v. Ashcroft*, 379 F.3d 876, 890 (9th Cir.2004). Here, the IJ explicitly found that Shire provided credible testimony "regarding his own life in Somalia, his employment and time in Mogadishu, and his flight from the country in 1998." The IJ stated she had some "reservations" about Shire's testimony regarding the murders of his father and uncle, but this is inconsequential; an applicant's "[t]estimony must be accepted as true in the absence of an explicit adverse credibility finding." *Kalubi v. Ashcroft*, 364 F.3d 1134, 1137 (9th Cir.2004).

lished eligibility for asylum." *Ali v. Ashcroft,* 394 F.3d 780 (9th Cir.2005) (quoting *Singh v. INS,* 134 F.3d 962, 966 (9th Cir. 1998)).

In this case, the BIA summarily affirmed the IJ's decision to deny asylum and withholding of removal. The IJ observed that the documentation Shire presented (letters from individuals who wrote on Shire's behalf) was only marginally helpful to sustain his burden of proof regarding his date of arrival in the U.S. and his Somalian citizenship. Moreover, the letters contained no information about the nature and circumstances of Shire's life in Somalia or the reasons why he left the country. Additionally, Shire could not provide any reason why he believed his father and uncle were killed by a rival clan, other than the fact that the clan was known to be violent and powerful. The IJ concluded that Shire had established a subjective fear of possible future harm, but found the fear to be rooted in the general conditions of violence and strife that exist in Somalia, which is not sufficient to qualify for asylum. *See, e.g., Rostomian v. INS,* 210 F.3d 1088, 1089 (9th Cir.2000) (Christian Armenians fearful of Azeris); *Limsico v. INS,* 951 F.2d 210, 212 (9th Cir.1991) (Chinese–Filipino); *Vides–Vides v. INS,* 783 F.2d 1463, 1469 (9th Cir.1986) (El Salvador).

The IJ acknowledged that Somalia is without a central government, and that anarchy and violence are "the only reigning leaders." Even so, the record also established that as recently as 2002, the Midgan have been able to settle in Puntland,[1] obtain protection and build up an economic activity, and can usually avoid involvement in clan disputes. Additionally, the record indicated that Midgan and oth-

er minority groups who may risk harassment by Somali clans in rural areas do not necessarily find themselves facing difficulties in Mogadishu now.

The BIA's summary affirmance was supported by substantial evidence and Shire did not present evidence so compelling that no reasonable fact finder could find that he did not establish eligibility for asylum; therefore, I would deny review.

---

1. This large region in northeastern Somalia covers roughly 80,000 to 100,000 square miles, according to internet sources.